Today's cases will be called as previously announced and the times are as allotted. The first case this morning, your honor, is 15-2365, United States v. Foster-Starks. Good morning. Good morning, Ms. Kelleher. Victoria Kelleher for Mr. Foster-Starks. May it please the court. Central to Mr. Foster-Starks' case, his defense in this case was the lack of knowledge of the firearm and the ammunition that was in the passenger seat in a bag at the time that he was stopped by the trooper in this case. There was testimony by both the trooper and Mr. Starks that disputed certain central facts as to what was going on at the time and which spoke to Mr. Starks' level of knowledge at the time that the stop occurred. Those facts included that Mr. Starks was allegedly drifting from lane to lane, that he was going 40 to 45 miles per hour, that he was nervous at the time of the stop. Mr. Starks refuted all of that in his testimony. He specifically testified that he had personal friends who were police officers and so he was not nervous, that he had himself applied to be a police officer, that he had a CDL license and so would not have been drifting in lane to lane. Nevertheless, the court in this case provided the jury with an instruction. And I do wish to correct the record in my brief. I did cite to the instruction that the judge had said he was going to give rather than the instruction that was actually given. So I do want to make that clear that the instruction that was actually given was different in some material ways, actually relevant ways to my argument. But at any rate, he did, the court did provide an instruction which specifically stated that the jury was to not consider the fact that the law and the, I'm sorry, that the jury was, that there had been a hearing prior to the trial in which the lawfulness of the stop had been determined. Well wasn't that sort of required given what the defense had put in evidence? They had really raised the question of the stop in their evidentiary offerings during the trial. And so the court perhaps rightly thought that the jury would be confused, that it would have to think about what happened at the time of the stop, and that that issue was up again. So didn't to some extent the defendant put himself in the position of the court having to clarify what had happened earlier? In closing, the information, the discrepancy in what happened at the time of the stop was a factual dispute. There was never an argument made to the jury or even suggested that they should somehow, there should be some sort of jury nullification or they should consider the lawfulness of the stop. The argument was made to the point of whether or not the defendant in the case, there was any kind of consciousness of guilt on his part at the time that the stop occurred. Whether he was nervous, whether he was drifting in lanes and that sort of thing, all would have been factual issues that perhaps might have lent themselves to consciousness of guilt. And so it was the defense's purpose in bringing those issues to bear, in Mr. Stark's testifying in this case, and talking in closing about those issues, that he was in fact not nervous, that those were all factual disputes that went really to the heart of the defense in this case. There seems to be an unstated premise in your argument that the jury once told that the jury should infer that the court therefore resolved those credibility issues that overlapped into your defense against your client. What is the, assuming the jurors weren't lawyers, what is the line of reasoning that you posit that the jury went through when told simply that the court had determined it was a lawful stop? Well, one of the concerns that I had in my objection was that the judge was suggesting to the jury or actually telling them that there had been a pre-hearing determination. And so the jury was not privy to a particular hearing that had gone on, whether or not they had legal knowledge of exactly what had occurred during that hearing, that there was a hearing that had gone on. And the fact of the matter was, well, that the judge had made certain determinations at that hearing that would have related to the credibility issues and whether or not his... But that's my point. What line of reasoning does a jury go through to think, the judge ruled the stop was legitimate. I now can infer from that that he resolved those credibility issues that are now before me when the judge is telling me that the credibility issues are for me to decide. I'm missing the puzzle. I know as a lawyer, what we know about the law of legal stops, we can infer what the judge needed to decide. How is the jury to have done that? Well, only with what they were presented at trial, which was the disputed testimony between my client and the trooper in the case. The judge did not have disputed testimony. And so I think the jury would reasonably infer that the judge had heard the disputed testimony and made a determination about the lawfulness of the stop and weighed out the disputed testimony between the two individuals that testified at trial. On the lawfulness of the stop, jurors might have thought he didn't have a warrant. I'm sorry? Maybe the jurors thought, all right, he didn't have a warrant. We know that you don't need a warrant for that type of stop, so that wouldn't have been sort of a decisive issue. But how is a jury even getting to the point of saying the judge must have disbelieved the defender? Well, I mean, I'm not sure that they would have thought about a warrant necessarily. I think the only thing they had before them was the testimony of the two individuals, the trooper and my client. And so that I would suggest was what they were left to infer, whether there would have been a prior hearing in which those two individuals had testified and that the judge had made a decision. Is it your position that the court should have said absolutely nothing about the prior ruling and only said it's up to you to determine credibility? Is that your basic position? It is, yes. I mean, there was no, like, if this were a case where the issue had been presented to the jury, where I had argued in some way that there was something, you of the stop. Perhaps then a correcting instruction might have been appropriate. There was nothing of that nature in my argument. And, in fact, my argument, again, solely went to my client's lack of consciousness of guilt. And so I would suggest that there was no reason. It was unnecessary. I weighed in on the issues that were before the jury and, in fact, took, in some way, stepped on their role as arbiters of the fact. Well, what would your position be if the judge had said, not that I have found the search to be lawful, but simply expressly said, you do not have to decide. It is not an issue before you whether the stop was lawful or not. Your only issues are issues of credibility based in evaluating the testimony you hear. What if the judge had given that instruction? Would you have found that an error? I would not. I think that, typically, juries are told that they are not to decide the law, that that is the judge's role, is to determine the law, and they are the determiners of the fact. I ask the question because I thought your answer to Judge Doyle's question might suggest that you would find that an error, too. But I understand you would not. Thank you. Do you have a second issue I think you wanted to address? I do, yes. Thank you. So the second issue, of course, has to do with the Armed Career Criminal Act and whether or not, particularly in this case, armed robbery falls under and qualifies as a violent felony under the Armed Career Criminal Act and under the United States v. Johnson decision. I would suggest to the court, of course, that it is not a violent felony, notwithstanding the decision in the United States v. Luna. I would argue that in the United States v. Luna, the decision related to the use of force, in particular, was dicta, that that decision came out in a case in which the defendant was arguing constructive force and not actual force, that the argument was never made to the court. In fact, the court said that they were acting in the absence of an argument made by the would not be, I'm sorry, why armed robbery did not entail actual force? Well, it entails, as I understand the law in Massachusetts, it entails at least the threat of force. And I would suppose that if someone were confronted with the threat of force in an armed robbery situation, the only natural way to react to it would be to use force that could produce serious injury, serious consequences. And that would satisfy the force provision of the federal statute, wouldn't it? In looking at the Massachusetts case law, the most innocent conduct, as is required in looking at these cases, does not entail the kind of violent force that Johnson talked Well, in theory, you know, and maybe in one armed robbery in a million, that would be a description of what was going on. But in practical terms, in most armed robberies, if the victim perceived the threat of force, the victim would naturally perceive the threat of a force, a threat of serious consequences. Isn't that the case? Well, I think, I'm not sure that the analysis allows for looking at most of them. What the analysis, as I understand it, looks at is, in fact, whether or not there is case law that allows for a conviction where there is, where the violence does not meet the standard. Well, I think you're entirely right about that, except, I guess, when we get to a situation in which the exceptional case, e.g., the slightest threat, is, in fact, so unlikely, so rare, that there would be a question as to whether one, for purposes of the classification, the categorization rule, one really should take that exceptional case as being significant. Well, my understanding in the case law, Commonwealth v. Jones, is a similar case, and that talks about the fact that, in fact, there has to be, there is no requirement for force at all. The force is immaterial. Well, a threat will do it, no question about that. But isn't the threat going to be perceived, except in the totally eccentric case, as a threat or force of serious injury if one does not hand over the goods? Well, I think there are cases that involve purse snatching, where specifically it says, and it's not just one case, but there were several cases that I noted in my brief, specifically says that you can actually take a purse from someone and not touch them in any way. In fact, in Commonwealth v. Brown, it happened where the purse was taken from behind, as I recall. And so there was, the person was not even aware of any kind of threat or force or actual force in those cases. So there doesn't even have to be an awareness prior to the robbery taking place. I don't know if there are any other questions. Do you want to reserve the remainder of your time? I would. Thank you very much. Judge Kayada, and may it please the Court, Mark Quinlivan on behalf of the United States Court of Appeals. If I may begin with the second issue. Before you begin, could I ask you a hypothetical on that second because of what she raised? Let's assume you have a woman sitting in a restroom. She has her bag hung over the back of the chair, and I'm an armed robber. I come in armed with a gun. I don't brandish the gun. I do nothing. I just surreptitiously pick up the bag, and I walk out the door. And fortunately for the woman, the cameras pick me up, and I'm stopped. And it's clear that I'm armed. I've robbed her bag. It fits into all of the criteria. What do you say to that? Judge Stahl, I'm not sure whether that would be an armed robbery or a larceny from the person under Massachusetts law. I'm wrong. Because. You have a gun? That's right. But the statute requires force and violence, meaning that there has to be some force used, applied to the person, or assault and putting in fear, meaning that the witness was subjectively intimidated. It does not appear to me that either situation would be. But taking your example, Judge Stahl, and taking the most innocent conduct under Massachusetts law, that really was what the Supreme Judicial Court was deciding in Commonwealth versus Jones. Because the court was rejecting the majority rule amongst the states, that an armed robbery has to involve either an injury to the person, resistance by the victim, or the physical object being stolen has to be attached to the person that some resistance be affected. And in rejecting that rule, the SJC said that that wrongly focused on the reaction of the victim, rather than the readiness of the perpetrator to inflict harm. And in footnote six of that opinion, in further elucidating that standard, it noted that individuals feel that they can guard against the pickpocket, but they abhor the robber whose hardy hood makes them unable to resist the taking. But don't they say in Jones that specifically on the degree of force that must be exercised to have a violation of the Massachusetts statute, that as long as it's sufficient to produce awareness of the act in the victim, that's enough? That's right. And then the Brown decision, subsequently the Massachusetts Appellate Court, subsequently has the classic purse snatching case, where someone just grabs the purse and runs with no threat. The person wasn't even aware of it until they were running. And the force doesn't meet the Johnson standard of violent force, because Massachusetts under Jones has specifically said as long as it can produce awareness. So I don't see how we say that that Brown case, for example, would be a violent crime. I think the answer, Judge Keada, is that first off, in the Santos case, the Supreme Judicial Court made clear that you don't subdivide the individual acts in an armed robbery, that you can take into account not just the taking, but what happens afterwards. It may be the case, yes, that the victim is momentarily surprised by the taking and does not immediately know what happened. But what Jones makes clear is whenever a robber takes property without making any attempt to hide the fact that they are doing so, it comes with it the omnipresent threat that force will be used in the event that any resistance is given. How can you have an after the fact? If you take the Brown situation, someone's walking along and all of a sudden someone runs up behind them, grabs the purse, they feel just a tug as it comes off their hand, and the person is lickety-split, gone. Clearly we don't have the Johnson force, so you've got to rely on a threat. And yet I don't think we've seen anything in the case law that suggests that the Massachusetts jury in finding guilty has to even find that the person felt that they were threatened with serious bodily injury or pain, which you mean under ACCA. That's right. I had two answers to that, Judge Chaota. First off, again, the person may be momentarily surprised by the taking, but what you end up with is the classic fight or flight response. Once the purse is taken, do you go after that person, or do you recognize that if you do so, that person might respond with violent force? And what our reading of Jones is, it is making clear in taking that most innocent conduct, again, that that qualifies as an armed robbery because of the readiness of the perpetrator in all situations to use force if necessary. Going back to my original hypothetical, if you were aware, I grabbed your arm when I pulled it off, you don't know necessarily, do you, what the perpetrator is likely to do. So is that sufficient? Do you have to know what the perpetrator is likely to do, or just the likelihood that something may happen if you respond? Judge Stahl, I think what Jones makes clear and other decisions have recognized is that an armed robbery carries with it, or even in Jones' was actually an unarmed robbery case, and it carries with it the inherent threat that force will be used. Remember, under Massachusetts law, the armed, the gun, for example, does not need to be brandished. The victim doesn't even need to bow. That's exactly right, Judge Stahl. Which is why we have not argued that that is a material distinction. So I think you're saying in any crime, where the person becomes aware that the crime has been committed, and where the criminal is arguably still in proximity, that's an act of violation because the person, that's a crime of violence because the person is thinking, oh, if I chase after that person, maybe they'll hurt me. That's right, that's right. That can be a problem. A fraud, if someone defrauds me, right, and then they run out the door after defrauding me, you'd say that's a crime of violence? Well, that's why, Judge Chiava, that's why the SJC adopted the rule it did in Jones. Because, again, the majority rule focused on the subjective response of the victim rather than the objective act of the perpetrator. So you're therefore saying unarmed robbery is also an act of crime? Yes, although the difference between the two is that in our view, armed robbery also is squarely controlled by this court's decision in Luna. We think Luna supports the conclusion that unarmed robbery does as well. But in our view, Luna is in fact dispositive of the armed robbery. How about check kiting? I'm sorry? Check kiting. Check kiting. Is that a crime of violence? Judge Chiava, I'd have to look at the elements under Massachusetts law. But it sounds like the logic of your argument is that as long as it had to occur in the presence of the victim, that it's a crime of violence. I think there would be a difference because, again, I don't think check kiting involves any physical touching like the horse and violin. Remember, the violence in unarmed robbery doesn't satisfy Johnson. That's right. So you're solely dependent upon the threat of force in your argument. With the only caveat being, Judge Chiava, that the threat of force comes into play because the victim is made aware of the theft. In other words, there are two versions. The assault and putting in fear does require that the defendant be subjectively put in fear because there is no physical touching. It's just an assault. It's just an attempted or threatened application of physical force. With the force and violence, yes, you're absolutely right. In terms of the use of force, the force itself in all instances doesn't satisfy Johnson 1. But the application of force with no attempt to hide that fact carries with it the inherent threat of violent force. And that's why the SJC adopted the rule it did in Jones. That's our best reading of that decision. So you would say, I think, contrary to cases I'm aware of, that theft, that, for example, Judge Stahl's hypothetical, as long as the person was also in the diner and saw the purse get removed and someone run off with it, even if she wasn't touched at all, you'd say there was a threat of violence there? No, because, again, the difference under Massachusetts law between robbery and larceny involves, even if it's a minimal degree of force, there has to be some degree of force involved. And that's what both the SJC and this Court have said in distinguishing between robbery and larceny. So you're saying the fear only arises from the force, the minimal force, that is itself not sufficient to satisfy Johnson's definition of the violent force that exists under ACCA. Yes, and, Judge Keada, let me just clarify in addition. And going back to Justice Souter's point, again, in the real world, in almost all instances, I think it's fair to say that an armed robbery is going to involve the use of physical force. Sure, but we know the test for us is the use of physical force. I understand. And I'm just pointing out that in that small category of cases in which it is not violent force or the use of violent force is at minimal, you get to the most innocent conduct, which is, again, we go back to Jones. That's why the SJC departed from the majority rule and extended armed robbery to those kinds of situations. Just briefly, I want to note why we think Luna is controlling. Because in Luna, this court held, and I think there are three pertinent statements this court made. Now, the defendant in that case argued that armed robbery didn't qualify because the version of the offense includes assault and putting in fear, and that doesn't involve the use of physical force within the meaning of Johnson 1. This court first said that that's incorrect because the defendant failed to recognize that the ACCA definition includes the use, attempted or threatened use of physical force. This court next said to the extent the defendant is contending that the version involving threatening words or gestures doesn't involve the use of force, or the threat of force, but the threat of something else. Massachusetts case law makes clear that it's the threat of force. And finally, this court said that the defendant has said nothing to show why in armed robbery cases, not cabin to the threatening words and gestures, but in armed robbery, the level of force doesn't fall within the definition of Johnson 1. And lest there be any possible doubt on the subject, in footnote 18 of its decision, this court said, we don't have to decide whether or not the defendant was convicted of the force and violence or assault and putting in fear version because, as explained below, both are proper ACCA predicates. I don't think this court could have been any more plain that it was deciding that armed robbery qualifies under the force clause across the board. And I would note that the district court decisions that my friend has relied on don't grapple with footnote 18 of that decision. I would point out as well that several other district courts in this district have found that LUNA is indeed controlling. In our view, LUNA, again, I would think it would be a strong departure from the law of the circuit doctrine for a panel to say that that statement, which is as straightforward as one can be, that this court was making an across the board categorical determination, was simply dicta. See, I ask you to, your time is getting short, and I ask you to address the first issue, the instruction. Would you agree that the object of the instruction that was given could have been, could in fact have been satisfied by an instruction that simply said, you are not being asked to consider whether the stop was, as a constitutional matter, a lawful stop or not, and go on from there as opposed to saying, I have found that it was lawful. Would you agree that the, we'll call it the lesser instruction would have done the job? I would, Justice Souter, but I would also say that I think at that point we're talking about differences of degree rather than of kind in the sense that we're now beyond the point of arguing whether or not an instruction of this is per se impermissible, which would engender de novo review. We're simply saying, asking whether the particular wording of the district court's instruction was correct. That's subject to abuse of discretion review to the extent it was preserved, and I think there's a question whether given that the specific wording of this instruction was never objected to, I think there's a serious question whether that argument was preserved. But yes, Justice Souter, to complete the answer, yes, it could have been that alternative, but it was not in abuse of discretion to give the instruction that the district court did. Thank you. Thank you. Just to address a couple of points that were raised. One was the notion of an inherent threat and that being part of an actual force argument. I would suggest that, first of all, that it would be redundant of there being a constructive force argument, and second of all, that there is no requirement under Massachusetts case law that a defendant who is charged with armed robbery as a matter relative to actual force, that there be any decision by a jury beyond a reasonable doubt of there being an inherent threat underlying the actual force. And so I would argue that that is not part of an actual force and was not brought up through Jones. Thank you.